# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 8735 | DATE | 3/16/2004 |
| CASE TITLE | Chicago District Council of Carpent vs. Stanfred Laminating Company, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs' motion for summary judgment is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 17 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | 24 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | MAR 17 2004 date mailed notice | |
| TH ✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHICAGO DISTRICT COUNCIL OF )
CARPENTERS MILLMEN PENSION FUND, et al., )
) No. 02 C 8735
Plaintiffs, )
)
v. )
)
STANFRED LAMINATING COMPANY, INC., )
)
Defendant. )

MAR 1 7 2004

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

Plaintiffs brought suit against Defendant under Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132 (2000), and Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185 (2000), alleging that Defendant violated its obligations under the applicable agreements by failing to submit monthly employee benefit reports and by failing to pay monthly fringe benefit contributions. Plaintiffs move for summary judgment. For the reasons stated herein, the Court grants Plaintiffs' motion in part.

## LEGAL STANDARDS

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986)). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2505. The Court "considers the evidentiary record in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

## BACKGROUND

Plaintiffs bring this action under ERISA Section 502 and Section 301 of the Taft-Hartley Act. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because of questions arising under these two statutes. (R. 16-1, Pls.' Statement of Undisputed Facts ¶ 1.)[1]

### I. The Parties

Plaintiffs Chicago District Council of Carpenters Millmen Pension Fund, *et al.* are a group of pension and welfare plans that receive contributions from numerous employers pursuant to collective bargaining agreements between employers and the Chicago and Northeast Illinois District Council of Carpenters ("Union"). (R. 16-1, Pls.' Statement of Undisputed Facts ¶ 2.)

Defendant Suke, Inc. is an Indiana corporation that was incorporated in 2001 for the purpose of buying the assets of Stanfred Laminating Company. (R. 21-1, Def.'s Counterstatement ¶ 1.) Suke purchased the assets of Stanfred in May 2001, and since that time

---

[1] Plaintiffs have not strictly adhered to Local Rule 56.1. The Local Rules require the party moving for summary judgment to provide "all facts supporting venue and jurisdiction in this Court." Local Rule 56.1(a)(3)(B). Plaintiffs' Local Rule 56.1(a)(3) statement fails to set forth showing that this dispute meets these requirements. Nevertheless, jurisdiction and venue are proper and Defendant has not objected to this deficiency.

has been doing business as Stanfred Laminating Company. (*Id.* ¶¶ 3-4.)[2] Stanfred conducts a countertop fabrication business and is an employer party to a collective bargaining agreement with the Union. (*Id.* ¶ 5; R. 16-1, Pls.' Statement of Undisputed Facts ¶¶ 2-3.) Keith Burke serves as Stanfred's president. (R. 21-1, Def.'s Counterstatement ¶ 2.)

## II. Obligations under the Collective Bargaining Agreement

### A. Entering the Agreement

On or about June 1, 2001, Defendant executed two written documents with the Union. (R. 21-1, Def.'s Counterstatement ¶¶ 6-7.) One document was the "Agreement between Stanfred Laminating Company and Chicago and Northeast District Council of Carpenters Local 1027" ("Agreement"). (*Id.* ¶ 6.) Earl E. Oliver signed this document as President of the Union, and Keith Burke signed as President of Stanfred. (*Id.*) The other document, signed at the same time, was the "Stanfred Laminating Memorandum of Understanding" ("Memorandum"). (*Id.*) Bill Casey signed this document as Vice President of the Union, and Burke signed as President of Stanfred. (*Id.*)

### B. Obligations Created by the Agreement

The Agreement binds Defendant to pay fringe benefit contributions to Plaintiffs on a monthly basis according to the rates set forth in the Agreement. (R. 16-1, Pls.' Statement of Undisputed Facts ¶ 3.) The Agreement requires Defendant to make fringe benefit contributions for each hour worked by its carpenter employees, and requires Defendant to make these payments each month. (*Id.* ¶¶ 4-5.) Defendant had an obligation to pay a certain amount to the Pension

---

[2] The Court will refer to Suke, Inc. and Stanfred Laminating Company collectively as "Stanfred."

Trust Fund for every hour worked by bargaining unit employees up to 175 hours per month for each employee. (R. 21-1, Def.'s Counterstatement ¶ 8.) The parties disagree on the rate at which Defendant was required to make such contributions. Defendant states that the rate was $1.67 per hour at the start of the Agreement's period of applicability, but the Plaintiffs advocate a rate of $2.27 per hour at times and $2.38 per hour at other times. (*Id.* ¶¶ 8, 11; R 19-1, Def.'s Resp. to Pls.' Statement of Undisputed Facts ¶ 7; R. 16-1, Pls.' Statement of Undisputed Facts ¶ 7, Tab 4.) The Agreement provides for the reopening of negotiations for wage rates for the contract year of June 1, 2003 to May 31, 2004, and for the possibility of an increase in pension contribution and health and welfare contribution rates. (R. 21-1, Def.'s Counterstatement ¶ 9.) No such negotiations occurred. (*Id.*) The Agreement also calls for liquidated damages and interest in case of a breach. (R. 16-1, Pls.' Statement of Undisputed Facts ¶ 5.)

Defendant also contracted to pay $3.98 per hour to the Chicago District Council of Carpenters Health and Welfare Trust Fund for the first 175 hours worked by each bargaining unit employee per month. (R. 21-1, Def.'s Counterstatement ¶ 12.) Additionally, the Agreement provides for a possible increase of up to $0.25 per hour to the Health and Welfare Fund contribution rate. (*Id.* ¶ 13.)

Under the Agreement and Memorandum, the Plaintiffs and the Union were to provide health and major medical insurance coverage for bargaining unit employees. (*Id.* ¶ 14.)

### C. Performance

Defendant submitted reports to the Plaintiffs for the months of June 2001 through May 2003 for hours worked by its union employees. (R. 16-1, Pls.' Statement of Undisputed Facts ¶ 6.) Though Defendant submitted reports for these months, it did not submit the proper

4

accompanying payments. (*Id.*) During that time, however, Defendant did make two payments to the Health and Welfare Trust Fund — $12,230.54 in April 2002 and $12,294.22 in June 2002. (R. 21-1, Def.'s Counterstatement ¶¶ 15, 16.) Since June 2003, Defendant has submitted neither reports nor payments. (R. 16-1, Pls. Statement of Undisputed Facts ¶ 10.)

In the spring of 2002, Plaintiffs issued Blue Cross/Blue Shield health and welfare insurance cards for April, May, and June of 2002 to Defendant's employees. (R. 21-1, Def.'s Counterstatement ¶ 17.) After Defendant made the April and June payments to the Pension Fund, Keith Burke maintains that the Union and Trust Funds had terminated Health and Welfare coverage for Defendant's employees, even though Plaintiffs had issued new coverage cards. (*Id.* ¶ 18.) At some point during the Spring of 2002, health and welfare claims submitted by Stanfred employees were denied. (*Id.* ¶¶ 17-19.) Mr. Burke called the Plaintiffs, and an individual named Derek Iwiniak allegedly told Burke that the Health and Welfare coverage was cancelled because Defendant's payments had been diverted to the Pension Fund. (*Id.* ¶ 20.)

## ANALYSIS

Plaintiffs claim that Defendant Stanfred is liable for failure to make proper fringe benefit payments owed to Plaintiffs under the agreements. (R. 1-1, Pls' Compl. Count I ¶¶ 1-12.) In addition to past due benefit payments, Plaintiffs also claim that Defendant is liable for interest, liquidated damages, and costs in accordance with 29 U.S.C. § 1132(g)(2)(B), (C), and (D). (*Id.* ¶¶ 10-12.) Finally, Plaintiffs' complaint alleges that Defendant is liable for failure to submit reports for the months of September 2002 to the present. (*Id.* Count II ¶¶ 1-14.) Plaintiffs have since altered their position, and now state that Defendant has failed to submit reports only from June 2003 to the present. (R. 16-1, Pls.' Statement of Undisputed Facts ¶ 10.)

5

It is undisputed that Defendant failed to make all of its payments owed to Plaintiff. Defendant argues that summary judgment is not appropriate, however, because Plaintiffs breached their contract with Defendant and therefore they may not seek unpaid contributions. Defendant also contends that equitable estoppel prevents Plaintiffs from seeking unpaid contributions. Finally, Defendant contests the amount of contribution required by its contract with Plaintiffs. For the following reasons, the Court finds that Plaintiffs are entitled to partial summary judgment.

## I. Unpaid Health and Welfare Contributions

### A. Breach of Contract

Defendant claims that Plaintiffs breached contractual obligations they owed to Stanfred by diverting payments from the Health and Welfare Fund to the Pension Fund. As a result of this breach, Defendant argues that Plaintiffs may not recover contributions. Defendant contends that the diversion amounts to breach of contract because Keith Burke, as President of Stanfred, is solely responsible for making decisions concerning payment to the Union and to the Plaintiffs and he did not authorize the Union, the Plaintiffs, or any of their agents to divert the Pension Fund payments. (R. 18-1, Def.'s Memo. in Opp. to Pls.' Mot. for Summ. J. p.8; R. 21-1, Def.'s Counterstatement ¶¶ 22-24.) Defendant does not, however, point to evidence of an actual obligation the Funds breached by allegedly diverting payment from the Health and Welfare Fund to the Pension Fund. Stanfred points to a paragraph in Keith Burke's affidavit that says nothing about the Plaintiffs' obligations. (R. 21-1, Def.'s Counterstatement ¶ 14; R. 21-2, Aff. of Keith Burke ¶ 7.) The Court discovered related statements in paragraph 11 of Defendant's affidavit, where Mr. Burke simply states "[i]n return for the monthly contributions, the Union and Trust

6

Funds had a contractual obligation to provide health and major medical insurance . . . under the agreement and memorandum." (R. 21-2, Aff. of Keith Burke ¶ 11.) Paragraph 11 of the affidavit in turn sends the Court to paragraphs 3 and 7 of the Agreement. (*Id.*) These paragraphs do not contain any language explaining the Health and Welfare Plan's obligations. (R. 21-3, Dep. of Keith Burke Ex. 1 Agreement ¶¶ 3, 7.)

Furthermore, pension and welfare trusts are not parties to collective bargaining agreements and trust agreements between employers and unions. Rather, they are third party beneficiaries. *See Robbins v. Lynch*, 836 F.2d 330, 333 (7th Cir. 1988) (pension or welfare trust is third party beneficiary of collective bargaining agreement). In this case, neither the Pension Fund nor the Health and Welfare Fund signed the Agreement or Memorandum. (R. 16-1, Pls.' Statement of Undisputed Facts Tab 2.) Accordingly, this Court will not make assumptions as to the existence or nature of any contractual obligations Plaintiffs may owe to Stanfred.

A party opposing a motion for summary judgment must present more than a "mere scintilla of evidence" to support its position. *See Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512. Stanfred has failed to provide more than a mere scintilla of evidence to support its claimed contract breach defense, and therefore has failed to raise a genuine issue of material fact on this issue.

### B. Equitable Estoppel

Defendant next argues that Plaintiffs may not collect delinquent contributions because of the equitable doctrine of estoppel. Defendant correctly recognizes that employers who are obligated to make contribution payments to a pension or welfare fund pursuant to a collective bargaining agreement generally cannot assert contractual or equitable affirmative defenses.

7

Congress enacted Section 515 of ERISA to simplify the collection process for ERISA plans seeking delinquent contributions. *Cent. States, S.E. & S.W. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1152 (7th Cir. 1989). Applying Section 515, the Seventh Circuit has held that ERISA pension and welfare funds are like holders in due course in commercial law, "entitled to enforce the writing without regard to understandings or defenses applicable to the original parties." *Id.* at 1149. This means that, in general, an employer sued by ERISA pension and welfare funds for delinquent contributions cannot assert against the *funds* most defenses it has against the *Union. Id.; Robbins*, 836 F.2d at 333-34. This rule does not, however, preclude an employer from asserting against pension and welfare funds any defense it may have against the funds themselves. *Laborers' Pension Fund v. Litgen Concrete Cutting & Coring Co.*, 128 F.R.D. 96, 98 n.2 (N.D. Ill. 1989) (noting that *Gerber Truck* does not prevent employer from raising "as a defense against the Funds any of *their* actions which amount to . . . estoppel"(emphasis added)).

Courts are, however, reluctant to apply the estoppel doctrine in ERISA cases. *Black v. TIC Investment Corp.*, 900 F.2d 112, 115 (7th Cir. 1990). The Seventh Circuit has explained that the rule requiring that plan modifications be in writing, 29 U.S.C. § 1102(a)(1), and the required procedures for amending plans, 29 U.S.C. § 1102(b)(3), make estoppel a difficult claim to assert in the ERISA context. *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 585 (7th Cir. 1999). In ERISA actions, the estoppel cause of action has four elements: "(1) a knowing misrepresentation; (2) made in writing; (3) with reasonable reliance on that misrepresentation by the plaintiff; (4) to [plaintiff's] detriment." *Id.* at 585. Courts have also applied these elements to estoppel as an affirmative defense. *E.g., Trs. of Will County Local 174 Carpenters Pension Trust Fund v. F.V.E. & Assocs., Inc.*, 2001 WL 1298803, at *2 (N.D. Ill. Oct 24, 2001). "A claim will not lie for every

false statement reasonably and detrimentally relied upon by an unwitting plaintiff." *Coker*, 165 F.3d at 585. Here, Defendant asserts that Plaintiffs' diversion of contributions from the Health and Welfare Fund to the Pension Fund estopps Plaintiffs from asserting that Defendant has a continuing obligation to make payments. (R. 18-1, Def.'s Memo. in Opp. to Pls.' Mot. for Summ. J. pp. 9-10). Defendant does not allege any written misrepresentation by the Funds or the Union. Accordingly, Defendant fails to present evidence that would meet the elements of the estoppel defense, and fails to show that a genuine issue of material fact exists with regard to its obligation to make health and welfare contributions.

Stanfred's contract breach and estoppel defenses fail to overcome Plaintiffs' motion for summary judgment. Accordingly, the Court proceeds to the question of Defendant's failure to report and contribute.

## II. Unpaid Pension Fund Contributions

Defendant entered into a contract to pay fringe benefit contributions according to rates established by the Agreement and the accompanying Memorandum. Plaintiffs state that Defendant owes $173,384.40 in unpaid fringe benefit contributions, (R. 16-1, Pls.' Statement of Undisputed Facts ¶ 7), according to calculations based on the Agreement. Plaintiffs base their calculations, in part, on a rate of contribution to the Pension Trust Fund of $2.27 and sometimes $2.38. (*Id.* Tab 4, Ex. C.) Aside from the defenses already discussed, Defendant does not dispute that it did not make the relevant contributions. Defendant contends, however, that it owes much less because the contractual contribution rate is $1.67 per hour. (R. 21-1, Def.'s Counterstatement ¶¶ 8, 10.)

When courts examine a contract in the ERISA context, they apply federal common law rules of interpretation. *Cent. States, S.E. & S.W. Areas Pension Fund v. Kroger Co.*, 73 F.3d 727, 731 (7th Cir. 1996). These federal common law rules instruct the Court to interpret the Agreement and Memorandum "in an ordinary and popular sense" as a person of "average intelligence and experience" would. *Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 308 (7th Cir. 1992) (internal quotations omitted). If an agreement is ambiguous, the trier of fact must resolve questions of interpretation. *Kroger*, 73 F.3d at 732. In the ERISA context, a contract is ambiguous if it is "susceptible to more than one reasonable interpretation." *Id.* "When parties suggest different, yet reasonable interpretations of a contract, the contract is ambiguous." *Id.*

Here, the opposing parties have suggested different, yet reasonable interpretations of the Agreement and Memorandum. Plaintiffs' position that the contribution rate is $2.27 finds support in section 8.1 of the Agreement, which states "[t]he Employer shall pay into the Chicago District Council of Carpenters Millmen Pension Fund $2.27 per hour . . ." (R. 16-1, Pls.' Statement of Undisputed Facts Tab 2 p. 6.) The Memorandum further supports this position with its statement "[i]ncorporate Union Pension of $2.27 per hour . . . effective 07-01-01." (*Id.*) On the other hand, Defendant's position that the contribution rate is $1.67 is also supported by the Agreement. Specifically, a note included in the Agreement states that "[t]he Employer has agreed to pay $1.67 per hour increase for each employee covered by this agreement into the Chicago and Northeast Illinois District Council of Carpenters Millmen Pension Fund effective July 1, 2001." (*Id.* p. 2.) The Memorandum further complicates the issue with its inclusion of the statement "[s]top 60 cents IRA effective 06-01-01." (*Id.* p. 15.) The Memorandum rate of $2.27 minus 60 cents would equal $1.67, but the contract does not explain with any clarity the relationship among the various

10

provisions noted here. Plaintiffs have not responded to Defendant's explanation of the contribution rate and have not even argued that Defendant's reading is unreasonable.[3] Therefore, a genuine issue of material fact exists with respect to the contribution rate. The Court therefore denies Plaintiffs' motion for summary judgment with regard to the amount of unpaid Pension Fund contributions and the amount of interest and liquidated damages arising from them.

### III. Unpaid Health and Welfare Contributions

Defendant asserts that it made two contributions to the union employees' Health and Welfare Fund. Defendant does not claim to have made any other payments to this fund. Because the Court has rejected Defendant's asserted defenses, Defendant is liable for unpaid Health and Welfare Fund Contributions. Plaintiffs' motion is granted with respect to these contributions — minus the April and June 2002 payments — and Plaintiff is ordered to submit a revised calculation detailing the contribution deficiencies.

### IV. Failure to Submit Monthly Contribution Reports

Defendant admits that it did not submit monthly contribution reports from June 2003 to the present. (R. 19-1, Def.'s Resp. to Pls.' Statement of Undisputed Facts ¶ 10.) As the Court has already rejected Defendant's asserted defenses, Plaintiff is entitled to summary judgment that Defendant improperly withheld monthly contribution reports from June 2003 to the present.

---

[3] Plaintiffs filed a Motion for Leave to File a Reply Brief and Response to Additional Facts Instanter on October 24, 2003. The Court granted Plaintiffs' motion on October 29. Nevertheless, Plaintiffs did not attach or subsequently file a reply brief in connection with their summary judgment motion.

## CONCLUSION

Accordingly, the Court grants Plaintiffs' motion for summary judgment in part. The Court grants summary judgment in favor of Plaintiff on the matter of Defendant's failure to submit monthly contribution reports for the months of June 2003 to the present. The Court also grants summary judgment on unpaid Health and Welfare contributions, but orders Plaintiff to submit a detailed list of such deficiencies. Due to ambiguity in the Agreement and Memorandum, however, the Court denies summary judgment on the question of the amount due in unpaid Pension Fund contributions plus interest and liquidated damages.

Dated: March 16, 2004　　　　　　　　　　　　　　ENTERED

*/s/ Amy J. St. Eve*
Amy St. Eve
United States District Court Judge